UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LAURIE FRUGE,<br>3377 South Stafford Street<br>Arlington, VA 22206,<br><br>        Plaintiff,<br><br>    v.<br><br>JEROME POWELL, CHAIRMAN of the<br>BOARD OF GOVERNORS of the<br>FEDERAL RESERVE SYSTEM,<br>20th Street and Constitution Ave. NW<br>Washington, D.C. 20551,<br><br>        Defendant. | Case No.   1:20-cv-02811<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff LAURIE FRUGE, by her undersigned counsel, comes now and complains of Defendant JEROME POWELL, CHAIRMAN of the BOARD of GOVERNORS of the FEDERAL RESERVE as follows:

### NATURE OF THE CASE

1. In 2014, Plaintiff was a 20-year employee of the Federal Reserve System and the Federal Reserve Board of Governors with an exemplary performance history. She consistently earned performance ratings of "Outstanding" or "Commendable" from at least 2008 through 2014.

1

2. However, everything changed after December 2014 when Plaintiff began to disclose events and actions that she believed to be violations of law and regulation, abuse of authority, and gross mismanagement by managers and employees in her section.

3. Although discrimination and retaliation against Plaintiff was prohibited by 12 U.S.C. § 1831j ("Depository institution employee protection remedy"), the managers who were the subject of her disclosures retaliated against Plaintiff by lowering her performance evaluation ratings.

4. When Plaintiff continued to assert her protected disclosures to her new Director and the Office of the Inspector General (OIG) investigated, her managers and the new Director further retaliated against her by continuing to falsely lower her performance ratings.

5. When Jaclyn Hodges, one of the primary subjects of Plaintiff's reports, was promoted from a position as Plaintiff's co-worker to be Plaintiff's direct supervisor, Hodges immediately increased the retaliation against Plaintiff by (a) issuing Plaintiff a Performance Warning at her next mid-year review and imposing an improvement period on her, (b) failing to provide Plaintiff required feedback during the performance review period, (c) falsely alleging that Plaintiff's performance was unacceptable during the improvement period, and (d) engaging in harassing actions including false and public criticism and questioning of Plaintiff's work creating an escalating hostile work environment.

6. Agency management used Hodges' false and unwarranted allegations of Plaintiff's performance to propose Plaintiff's separation, allege that Plaintiff engaged in misconduct by her use of evidence supporting her response refuting the proposed separation, and ultimately separate Plaintiff from employment on February 14, 2019.  In fact, each time

Plaintiff protested that the Defendant's actions were retaliatory and unfounded over the years, Defendant escalated or moved forward with its actions against her.

7. This is an action to recover damages for the Defendant's unlawful actions retaliating against Plaintiff and eventually firing her for reporting her reasonably held concerns of violations of law and regulation, gross mismanagement, and abuse of authority protected by 12 U.S.C. § 1831(j).

## JURISDICTION AND VEVNUE

8. This Court has jurisdiction over the claims pursuant to 12 U.S.C. § 1831j(b).

9. Plaintiff is a covered employee by virtue of her former employment with Defendant and as defined by 12 U.S.C. §§ 1831j(a)(2) and (e) and Plaintiff timely filed this civil action.

10. Venue is proper because Defendant formerly employed Plaintiff in the District of Columbia.

## THE PARTIES

11. During the relevant time period, Plaintiff was Defendant's employee within the meaning and entitled to the protections of 12 U.S.C. § 1831j, as defined by 12 U.S.C. §§ 1831j(a)(2) and (e).

12. Defendant is the Chairman of a federal agency primarily located at 550 17th St NW, Washington, DC 20429.

## FACTS

### Background

13. In 1994, the Federal Reserve Bank hired Plaintiff as a Management Associate in the New Orleans Branch. Two years later, Plaintiff was promoted to Section Manager.

14. In 2003, Defendant, the Board of Governors of the Federal Reserve System, hired Plaintiff as a Financial Services Analyst. A year later, she was promoted to Senior Analyst in the Reserve Bank Operations and Payment Systems ("RBOPS") division.

15. From her initial employment to 2014, Plaintiff's performance was lauded and she consistently earned annual performance ratings of "Outstanding," "Exceeds," or "Commendable." In fact, she received a rating of "Outstanding" for 2013 and 2014.

**Plaintiff made protected disclosures in December 2014**

16. In December 2014, Plaintiff met with the director of Plaintiff's division at the time, Louise Roseman, and reported many concerns Plaintiff held regarding possible violations of law or policy, abuse of authority, and/or gross mismanagement by Director Roseman's subordinates.

17. At Director Roseman's direction, Plaintiff also reported her concerns to Jeff Martin, officer in the Employee Relations office.

18. Plaintiff's December 2014 disclosures to Director Roseman and Employee Relations included the following:

    a. That Michael Lambert, (Associate Director of Cash Section, Plaintiff's second-level supervisor), promoted individuals to management positions who did not have the competence necessary for the positions and promoted people who abused and/or harassed other employees (report of abuse of authority and gross mismanagement).

    b. That managers and employees (including Genie Foster (then manager), Lorelei Pagano (then Assistant Director), and Jaclyn Hodges (then Project Leader Grade

28)) abused and/or harassed Plaintiff and/or other division employees (report of abuse of authority, violation of law or regulation).

c. That Assistant Director Shaun Ferrari (Plaintiff's first-line supervisor) and Jaclyn Hodges (one of his subordinates) were involved in a personal relationship. Plaintiff believed the relationship was prohibited by law and/or regulation and that it contributed to preferential treatment (including regarding Hodges' travel benefits, cash awards, and promotions) constituting abuse of authority and gross mismanagement.

d. That Assistant Director Ferrari violated law and/or regulations and committed abuse of authority and gross mismanagement, particularly related to travel and travel expenses and misuse of government resources.

e. That Associate Director Michael Lambert, Assistant Director Shaun Ferrari, manager Genie Foster, and Assistant Director Lorelei Pagano engaged in favoritism towards some employees and exclusion and inequitable treatment of others causing an environment in which employees were afraid to report violations and/or were too disillusioned to do so (constituting abuse of authority and gross mismanagement).

**<u>Defendant retaliated by lowering Plaintiff's performance ratings in October 2015</u>**

19. Upon information and belief, Assistant Director Ferrari and then-Project Leader Jaclyn Hodges were investigated by the Agency's Employee Relations office regarding the reports made by Plaintiff.

20. At Plaintiff's next performance review, in October 2015, Assistant Director Ferrari issued Plaintiff a performance review that rated her in one competency as "Meets Most"

expectations in the first competency and "Achieves" in the second competency instead of the ratings she should have earned of "Exceeds" in each.

21. The 2015 evaluation was significantly reduced compared to the ratings Plaintiff had received before making her reports to the Director and Employee Relations in December 2014, particularly her ratings of "Outstanding" in the two most recent previous years.

22. Plaintiff told Associate Director Lambert that she believed the lowered rating issued by Assistant Director Ferrari was retaliation for her protected disclosures in December 2014 (reporting a violation of law or regulation, abuse of authority, and gross mismanagement). Although Associate Director Lambert and Assistant Director Ferrari then agreed to add language to the evaluation stating that Plaintiff had maintained her prior Outstanding level of performance and both managers and Plaintiff signed the revised review, Assistant Director Ferrari sent the original copy of the review to Human Resources to be maintained in Plaintiff's file. The original copy was not signed by Plaintiff and did not contain the revised, positive language.

**Plaintiff made protected disclosures between June 2016 and December 2016**

23. In or about the first quarter of 2016, Division Director Louise Roseman retired and was succeeded by Matthew Eichner.

24. In or about June 2016, the Board posted a new management position for Plaintiff's section that would add a new level of management between Plaintiff and her direct supervisor Assistant Director Ferrari.

25. In or about June 2016, Plaintiff reported her concerns of violations of law and/or regulation, abuse of authority, and gross mismanagement within the Cash Section to Division Director Eichner.

26. Plaintiff provided Director Eichner with the summary disclosure document she had previously provided to Director Roseman and Employee Relations in or about December 2014 and also added updated information and detail to that document.

27. Specific new disclosures Plaintiff made in June 2016 regarding Cash Section managers and employees included:

    a. That in 2015 Assistant Director Ferrari, Steve Son, CPO Director, and Saacha Mohammed (a new junior analyst) publicly smoked marijuana in violation of federal and state laws while on business travel for the Board and committed conduct unbecoming federal employees by doing so with and in the presence of exotic dancers.  Plaintiff also reported that these actions negatively impacted their professionalism and performance at the Reserve Bank meeting the next day.  These were reports of violation of law and regulation, abuse of authority, and gross mismanagement.

    b. That in 2015, Assistant Director Ferrari shirked his job responsibilities by not attending a work group meeting at which his presence was necessary in Los Angeles and instead mis-used government time and resources and violated law and regulation by scheduling a non-essential meeting at the EROC in East Rutherford, New Jersey.  Further, Plaintiff reported that Assistant Director Ferrari brought Ms. Hodges to the EROC meeting for personal reasons and they stayed overnight though Ms. Hodges had no responsibility for EROC or reason for the travel and attendance.  Plaintiff's report disclosed a violation of law or regulation, gross mismanagement, and abuse of authority.

    c.  That Assistant Director Ferrari further misused government resources and violated law and regulation by flying to Los Angeles on the second day of the work-group meeting, ostensibly to attend it, but only attended approximately three of the five hours on the second day (and none of the 8 hours on the first day), thus committing a violation of law or regulation, abuse of authority, and gross mismanagement.

**Defendant retaliated by lowering Plaintiff's performance ratings in October 2016 and issuing a Mid-Cycle Dialogue and Performance Warning in May 2017**

28. Director Eichner provided Plaintiff's disclosure document to the Office of the Inspector General (OIG).

29. Associate Director Michael Lambert contacted each member of the section (except Plaintiff) and stated that Assistant Director Ferrari and Ms. Hodges were "targets" of an OIG investigation.

30. An OIG investigation was conducted from approximately September to December 2016 in which Plaintiff took part and provided information regarding the above-described violations of law and regulation, gross mismanagement, and abuse of authority.

31. In October 2016, Assistant Director Ferrari again issued Plaintiff an unfairly low and retaliatory performance rating of "Meets Most" and "Achieves" in the two competencies instead of "Exceeds."

32. When Plaintiff challenged this rating and some of the comments in the evaluation, ER determined that Assistant Director Ferrari should not have administered her performance review during the OIG investigation.

33. However, Plaintiff's ratings were only changed to "Achieves" and "Achieves." The rating and evaluation still failed to appropriately recognize Plaintiff's performance and contributions, which should have been rated as Exceeds in both categories.

34. Upon information and belief, the OIG investigation uncovered evidence of wrongdoing and issued a report in or about November 2016.

35. Upon information and belief, as a result of the OIG investigation's findings, Assistant Director Ferrari separated from employment with the Defendant in or about December 2016

36. After the OIG investigation concluded and the report was issued, Jaclyn Hodges (one of the subjects of Plaintiff's 2014 and 2016 protected disclosures) constantly contradicted and criticized Plaintiff in staff meetings. These criticisms intensified after the winter holiday period and particularly escalated when normal work schedules resumed in and after January 2017. Hodges' criticisms and tone were unreasonable and unwarranted and caused Plaintiff substantial humiliation, stress, anxiety, and frustration.

37. In January 2017, Amy Burr, a temporary officer, was brought in from the San Francisco District to fill former Assistant Director Ferrari's position managing Plaintiff's section.

38. Assistant Director Burr witnessed Hodges' harassment and abuse of Plaintiff but Burr did not act to correct it; Hodges' harassment during meetings continued until Hodges was assigned to a 6-month detail in another section in or about the second calendar year quarter of 2017.

39. Although Assistant Director Burr gave Plaintiff positive verbal and written feedback during 2017, she failed to issue a mid-point review as required in April 2017. Instead,

Burr continuously delayed the mid-year review and it did not occur until mid-August 2017, just weeks before the end of the rating cycle.

40. In October 2017, Plaintiff was issued a performance evaluation that re-lowered her ratings to "Meets Most" and "Achieves."

41. These ratings were contrary to the positive verbal feedback Burr had given Plaintiff throughout the year.

42. The evaluation and rating were never signed or dated by either Plaintiff's rating official, Assistant Director Burr, or the second-level official, Associate Director Lambert, thus obfuscating the identity of the person or people who determined the rating.

43. Additionally, Associate Director Lambert and Assistant Director Burr never sent the evaluation to Human Resources to be maintained in Plaintiff's file.

44. Plaintiff met with Director Eichner and asserted that this rating was unwarranted and that it was retaliation by Associate Director Lambert for Plaintiff's protected disclosures, but no changes were made.

45. In January 2018, Jaclyn Hodges (Plaintiff's co-worker) was selected for the new manager position and beginning February 1, 2018, she became Plaintiff's direct supervisor.

46. Hodges was one of the subjects of Plaintiff's prior protected disclosures but this selection created the first time Hodges was a manager and in Plaintiff's chain of command.

47. In May 2018, Brian Lawler was hired to permanently fill the position previously filled by Assistant Director Ferrari and Assistant Director Burr.  Due to the creation of the new position now occupied by Hodges, Assistant Director Lawler's position was now Plaintiff's second-level supervisor.

48. After her promotion, Hodges continued and escalated her practice of frequently humiliating Plaintiff in meetings with unwarranted criticism and contradictions and Hodges also engaged in this behavior in emails and in written feedback to Plaintiff's work. For example, Hodges issued unwarranted and overly-critical feedback in response to Plaintiff's work in emails Hodges copied to three other employees in May 2018 and July 2018.

49. On May 29, 2018, at the first formal opportunity to evaluate Plaintiff's performance and less than 4 months after assuming a position as Plaintiff's direct supervisor, Hodges issued Plaintiff a Mid-Cycle Dialogue and Performance Warning in which she alleged that Plaintiff's performance did not meet the Board's expectations and stated that if Plaintiff's performance did not improve over the next six months, she may be separated.

50. Hodges' allegations of inadequate performance were demonstrably false.

51. On June 7, 2018, Plaintiff refuted Hodges' allegations in a written response with supporting documents provided to Director Eichner. She also met with Director Eichner to discuss her rebuttal.

52. In this meeting, Plaintiff also told Director Eichner that she felt that the Performance Warning she was issued was retaliatory for her protected disclosures that had resulted in investigations of Hodges and other division managers by the Board and the OIG.

53. Contrary to the evidence Plaintiff provided, Director Eichner made incorrect findings regarding Plaintiff's performance and also made new false allegations regarding Plaintiff's participation in section activities and willingness to take part in them.

**Plaintiff made protected disclosures in August 2018**

54. In August 2018, Plaintiff met with her new second-level supervisor, Assistant Director Lawler, and made further protected disclosures when she reported that Hodges was engaging in abusive and harassing behavior towards her (report of abuse of authority, gross mismanagement, violation of law or regulation).

55. Plaintiff provided Assistant Director Lawler with emails and documents supporting her report.

56. Another co-worker, Amanda Goldin, told Plaintiff that she believed Plaintiff was being harassed by Hodges and Goldin stated that she had forwarded an email exemplifying this harassment to Director Matthew Eichner. Plaintiff reported Goldin's statement to Assistant Director Lawler and ER.

57. In a meeting with Assistant Director Lawler and a member of ER regarding Plaintiff's report, Assistant Director Lawler and the ER employee told Plaintiff that they did not believe Hodges was harassing her.

**Defendant continued to retaliate against Plaintiff for her protected disclosures and ultimately separated her from employment on February 14, 2019**

58. After Plaintiff complained to Assistant Director Lawler in August 2018, Lawler's behavior toward Plaintiff completely changed. His demeanor toward Plaintiff became markedly less open and friendly, he no longer invited or engaged in conversation or informal guidance, and began to engage in the same retaliatory behavior and harassment as Hodges.

59. For example, in or about early October 2018, Assistant Director Lawler publicly humiliated Plaintiff in a section budget meeting by informing the group (and Plaintiff for the first time) that he was removing her as team lead from a review on which she had

12

been working for months and stating that Plaintiff was not to work on any future reviews. He then dismissed the rest of group and asked Plaintiff to stay for a private meeting.

60. Plaintiff was humiliated by the public removal from the review and announcement that she would not be working on any more. These announcements and handling of events inferred to the group that Plaintiff was going to be terminated and caused the Plaintiff stress and anxiety, in addition to humiliation and embarrassment.

61. Board policy requires that employees receive a 90-day (mid-point) checkpoint after a performance warning after a performance warning to indicate whether or not performance has improved.

62. A 90-day mid-point checkpoint should have occurred on or around August 29, 2018. However, in violation of Board policy, Plaintiff did not receive any such timely communication from Hodges or Lawler after the May 2018 performance memo.

63. Instead, on October 31, 2018, after five months of the six-month performance improvement period had passed, Hodges issued Plaintiff a Learning Review Wrap Up and Performance Warning feedback memorandum asserting that Plaintiff was failing to meet performance expectations and that she likely would not be retained after the performance improvement period ended just one month later, on November 29, 2018.

64. Hodges' October 2018 allegations regarding Plaintiff's performance were, again, demonstrably false and anticipated separation was unjustified.

65. On December 14, 2018, Assistant Director Lawler issued Plaintiff a Performance Feedback memorandum, again alleging that Plaintiff's performance was unacceptable.

66. On December 14, 2018, Assistant Director Lawler issued Plaintiff a Notice of Proposed Separation based upon the May, October, and December 2018 memorandums regarding her performance.

67. The allegations in the December 14, 2018 Performance Feedback memorandum and underlying the Notice of Proposed Separation were, again, clearly false and retaliatory and separation was not warranted.

68. The allegations of unacceptable performance upon which the December 14, 2018 Notice of Proposed Separation relied heavily on the two memorandums Hodges had written regarding Plaintiff's performance (May 29 and October 31, 2018).

69. On December 14, 2018, the Board placed Plaintiff on administrative leave and notified all of the Reserve Banks, where Plaintiff was attempting to seek alternative employment.

70. On December 27, 2018, Plaintiff responded verbally to the Proposed Separation through a teleconference between herself, her attorney, and Director Eichner and presented evidence that her performance was not unacceptable.

71. On or about January 4, 2019, Plaintiff, through an attorney, submitted a timely written response to the Notice of Proposed Separation to Director Eichner consisting of a narrative response and supporting documents submitted as exhibits.

72. Plaintiff's January 4, 2019 written response contested the specific allegations of unacceptable performance, provided further evidence and argument that her performance was and had not been unacceptable, and also offered evidence that the negative performance memorandums and proposed separation were the result of unlawful retaliation for Plaintiff's disclosures protected by 12 U.S.C. § 1831j(b).

73. On or about January 23, 2019, Director Lawler issued an Amended Notice of Proposed Separation that added a new basis for separation.

74. The Amended Notice of Proposed Separation alleged that in Plaintiff's January 4, 2019 response to the proposed separation, her attorney provided exhibits which included documents marked "Restricted FR."

75. The Amended Notice of Proposed Separation alleged that Plaintiff provided these documents to her attorney in violation of the Board's Information Handling and Classification System Standard policy and without authorization.

76. Plaintiff's disclosures to her attorney were protected by the First Amendment, were disclosed on the advice of her attorney, did not constitute misconduct, and did not support a penalty of removal.

77. On or about January 28, 2019, Plaintiff responded verbally to the Amended Notice of Separation through a teleconference with Director Eichner and her attorney. Plaintiff presented evidence and argument refuting the allegations and supporting mitigation of any penalty.

78. On or about January 30, 2019, Plaintiff, through her attorney, submitted a written response presenting further evidence and argument refuting the allegations and supporting mitigation of any penalty.

79. On February 14, 2019, Director Eichner issued a decision removing Plaintiff separating her from Board employment effective that day.

## COUNT 1

(12 U.S.C. § 1831j – Depository institution employee protection remedy)

80. Plaintiff repeats and realleges paragraphs 1-79, above, as if fully set forth herein.

81. On or about February 14, 2019, Defendant terminated Plaintiff's employment due to disclosures Plaintiff made that were protected by 12 U.S.C. § 1831j ("protected disclosures") and her protected disclosures were a contributing factor in Defendant's decision to terminate her employment.

82. By and through it conduct, Defendant violated 12 U.S.C. § 1831j(a)(2).

83. As a result, Plaintiff has suffered damages including lost wages and benefits, front pay, pain and suffering, emotional distress, and mental anguish.

## COUNT 2

(12 U.S.C. § 1831j – Depository institution employee protection remedy)

84. Plaintiff repeats and realleges paragraphs 1-79 above, as if fully set forth herein.

85. Defendant issued Plaintiff a Learning Review Wrap Up and Performance Warning feedback memorandum ("October 31, 2018 Performance Warning") on or about October 31, 2018, asserting that Plaintiff was failing to meet performance expectations.

86. The October 31, 2018 Performance Warning was issued due to disclosures Plaintiff made that were protected by 12 U.S.C. § 1831j ("protected disclosures") and her protected disclosures were a contributing factor in Defendant's decision to issue the October 31, 2018 Performance Warning.

87. By and through it conduct, Defendant violated 12 U.S.C. § 1831j(a)(2).

88. As a result, Plaintiff has suffered damages including lost income, pain and suffering, emotional distress, and mental anguish.

## COUNT 3

89. Plaintiff repeats and realleges paragraphs 1-79, above, as if fully set forth herein.

90. Defendant issued Plaintiff a Performance Feedback Memorandum ("December 14, 2018 Performance Feedback") on or about December 14, 2018, asserting that Plaintiff was failing to meet performance expectations.

91. The December 14, 2018 Performance Warning was issued due to disclosures Plaintiff made that were protected by 12 U.S.C. § 1831j ("protected disclosures") and her protected disclosures were a contributing factor in Defendant's decision to issue the December 14, 2018 Performance Warning.

92. By and through it conduct, Defendant violated 12 U.S.C. § 1831j(a)(2).

93. As a result, Plaintiff has suffered damages including lost income, pain and suffering, emotional distress, and mental anguish.

## COUNT 4

94. Plaintiff repeats and realleges paragraphs 1-79, above, as if fully set forth herein.

95. Defendant subjected Plaintiff to a hostile work environment and harassment from October 2015 to her separation by events including when Defendant unfairly downgraded her performance evaluations, issued her Performance Warnings and unfairly and falsely downgraded her performance on them, imposed a performance review/learning opportunity period on Plaintiff and then discriminated and retaliated against her in the evaluation of her performance during it, proposed her removal for unfounded performance allegations, proposed her removal for unfounded allegations of misconduct, and subjected Plaintiff to unwarranted criticism, berated her, and humiliated her in private and in front of colleagues through group emails and meetings.

96. The actions creating and contributing to a hostile work environment were taken due to disclosures Plaintiff made that were protected by 12 U.S.C. § 1831j ("protected disclosures") and her protected disclosures were a contributing factor to the actions comprising a hostile work environment.

97. By and through it conduct, Defendant violated 12 U.S.C. § 1831j(a)(2).

98. As a result, Plaintiff has suffered damages including pain and suffering, emotional distress, and mental anguish.

## JURY DEMAND

Plaintiff demands a trial by jury on all counts.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant, reinstate Plaintiff to her former position, and award Plaintiff lost wages and benefits, front pay, $300,000, or such other appropriate amount deemed appropriate by her proof at trial, for compensatory damages for pain and suffering and emotional distress, pre- and post-judgement interest, attorneys' fees, and any such other relief as is just and proper.

Date: 10/02/2020

Respectfully Submitted,

ALAN LESCHT AND ASSOCIATES, P.C.

By: /s/ Laura Nagel
Laura Nagel [1013962]
1825 K Street NW, Suite 750
Washington, D.C. 20006
Tel: (202) 463-6036
Fax: (202) 463-6067
laura.nagel@leschtlaw.com
*Counsel for Plaintiff*